UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID DUTRA, | No. C 08-05712 MHP |
| Petitioner, | |
| v. | **MEMORANDUM & ORDER** |
| BEN CURRY, | **Re:** Habeas Corpus petition |
| Respondent. | |

David Dutra, a prisoner currently in custody at Soledad Correctional Training Facility, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, Dutra challenges his state custody and seeks to compel the Board of Parole Hearings ("Board") to conduct a parole consideration hearing and find him suitable for release. *See* Docket No. 1 (Petition for Writ of Habeas Corpus) at 5. Dutra alleges his imprisonment is unlawful for four reasons: (1) the Superior Court's application of the "some evidence" standard to the Board's decision was contrary to clearly established federal law and was not supported by evidence in the record, (2) the Superior Court relied on unconstitutionally vague criteria in upholding the Board's unsuitability determination, (3) the Board's decision violated his due process rights by using unproven fact findings to extend his sentence beyond the statutory maximum, and (4) the Board's decision violated the terms of his plea agreement. Having considered the arguments of the parties and for the reasons stated below, the Court enters the following memorandum and order.

BACKGROUND

This case arises from Dutra's incarceration for the murder of his wife on the evening of December 6, 1983. Docket No. 3, Exh. C (*In Re Dutra,* No. H6371 (Sup. Ct. Alameda Cty., 2008)) at 1. Dutra pled guilty to second degree murder, and was sentenced to fifteen years to life. He was received by the California Department of Corrections (CDC) on May 29, 1985 with six months of pre-prison credits. *Id.* Dutra has received seven parole consideration hearings over the past twenty five years. *Id.* Parole was denied each time. *Id.* At the first hearing, which occurred on March 17, 1993, parole was denied because of the commitment offense and because Dutra had not completed the necessary programming. *Id.* At the second and third parole hearings, on December 19, 1994 and November 6, 1996, the Board told Dutra he needed to "demonstrate an ability to maintain gains over an extended period of time." *Id.* At the next two hearings, on May 30, 2000, and May 13, 2002, Dutra was told to continue the gains he had already achieved, but that he was not yet ready for parole and needed additional therapy to deal with his mental health. *Id.* On August 3, 2004, Dutra's parole was denied again, and it was re-denied again on September 6, 2006 based on his "especially cruel and callous" crime. *Id.* At this final hearing, the Board found Dutra needed to develop better control over his life and emotions, and to develop additional insight. *Id.*

Since his incarceration Dutra has had no additional violent infractions. *Id.* He has taken correspondence courses at the University of California at Berkeley. *Id.* In addition, he took courses in vocational sewing machine repair, as well as upholstery repair and wood repair. *Id.* He participated extensively in a therapy group for those who have murdered their spouses and was heavily involved in the Catholic church. *Id.* He attended frequent counseling, learning to express his emotions and cope with stresses in his life, notably the molestation he experienced in high school. *Id.* He also took courses in advanced marriage preparation, beginning stress management, and relaxation training. *Id.* During his time in prison, he has had only minor disciplinary infractions: two CDC-128A (custodial counseling chronos, a type of disciplinary report) for possession of unauthorized and unissued property, and a minor administrative CDC-115 for attempting to undermine the Catholic Church. *Id.*

On May 1, 2008, this court denied Dutra's petition for habeas corpus based on his 2004 parole denial. That same year, Dutra filed a petition for a writ of habeas corpus in the Alameda Superior Court, challenging his 2006 denial of parole. *See* Docket No. 2 (Memoranda of Points and Authorities) at 5. The superior court denied Dutra's petition on February 15, 2008, finding that there was some evidence to support the Board's decision, and that the Board could rely solely on the commitment offense in making its decision. *Id.* The California Court of Appeal for the First District also denied Dutra's petition on May 30, 2008. *Id.* The California Supreme Court subsequently denied Dutra's petitions for relief on August 1, 2008. *Id.* Dutra filed a petition for a writ of habeas corpus before this court on December 22, 2008. *Id.* The court issued an order to show cause on April 2, 2010, and a response to the petition was filed on September 14, 2010, followed by a traverse on October 6, 2010.

LEGAL STANDARD

This court may entertain a petition for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 409-13 (2000). Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole. *See Hayward v. Marshall*, 603 F.3d 546, 563 (9th Cir. 2010) (en banc); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

DISCUSSION

Dutra makes four primary arguments for habeas relief. *See* Docket No. 31 (Traverse) at 32.

First, Dutra argues he has a federally protected liberty interest in parole, and that the superior court's decision was contrary to clearly established Supreme Court law. *Id.* Second, Dutra argues the superior court relied on unconstitutionally vague criteria in upholding the Board's unsuitability determination. *Id.* Third, Dutra claims the court's decision violated his due process rights by using unproven fact findings to extend his sentence beyond the statutory maximum. *Id.* Finally, Dutra alleges the denial of parole violated the terms of his plea agreement. *Id.*

I.  Federally-Protected Liberty Interest

Dutra argues that he has a constitutionally protected liberty interest in parole and that the Board violated the Due Process Clause by denying his release without sufficient evidence. The Ninth Circuit in the past has held that a California law requiring that parole denials must be based on "some evidence" of prospective danger created a constitutionally protected liberty interest in the inmate's release absent any evidence of prospective dangerousness. *See, e.g.*, *Hayward*, 603 F.3d at 561; *Pearson v. Muntz*, 606 F.3d 606, 611 (9th Cir. 2010).

Dutra's arguments, however, are foreclosed by the Supreme Court's recent decision in *Swarthout v. Cooke*, 131 S.Ct. 859 (2011). In *Swarthout*, the Court emphasized that "[n]o opinion of ours supports converting California's 'some evidence' rule into a substantive federal requirement." *Id.* at 862. "There is no right under the Federal Constitution to be conditionally released prior to the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." *Id.* "The short of the matter is that the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business." *Id.*

Accordingly, there can be no valid claim under the Fourteenth Amendment for insufficiency of evidence presented at a parole proceeding. *Id.* at 862-63. Rather, the protection afforded by the federal Due Process Clause to California parole decisions consists of "minimal" procedural

4

safeguards. Specifically, parole applicants must receive "an opportunity to be heard" and a "statement of the reasons why parole was denied." *Id.* (citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 16 (1979)). In this case, there has been no showing that Dutra was either denied an opportunity to be heard at his parole hearing or that he was not provided with a statement of the reasons for his parole denial. Accordingly, Dutra's first argument must be rejected.

Although Dutra's remaining arguments regarding the Board's review may also implicate *Swarthout* to the extent that they ask this court to inquire into "the constitutionally adequate procedures governing California's parole system," it is not clear that these arguments are entirely foreclosed. Nonetheless, these three remaining arguments are without merit.

II.     Unconstitutionally Vague Criteria

Dutra argues that the parole regulations set forth in California Code of Regulations section 2402(c)(1) and in the case of *In Re Dannenberg*, 34 Cal. 4th 1061, 1095 (2005), are unconstitutionally vague. According to these regulations, a prisoner may be unsuitable for parole where the underlying offense was committed "in an especially heinous, atrocious or cruel manner." Traverse at 40. Dutra argues that the Superior Court's reliance on this standard was contrary to clearly established law because the United States Supreme Court has held similar language in statutes and regulations to be unconstitutionally vague. *See Godfrey v. Georgia*, 466 U.S. 420, 428 (1980), *Maynard v. Cartwright*, 486 U.S. 356, 361-64 (1988).

The type of vagueness claim Dutra asserts has only been recognized in the context of death penalty statutes. *See Godfrey*, 466 U.S. at 428 (holding a death sentence imposed on the grounds that a murder was "outrageously or wantonly vile, horrible, and inhuman" is arbitrary and capricious and therefore unconstitutional); *Maynard*, 486 U.S. at 361-364 (holding that imposing the death penalty based on whether the crime was "especially heinous, atrocious, or cruel" was unconstitutionally vague). However, there is a significant difference between a denial of parole and

5

the death penalty. According to the court in *Ford v. Wainwright,* "death is different." 477 U.S. 399, 407 (1986) (holding the death penalty constituted cruel and unusual punishment as applied to a mentally insane person, and therefore, was unconstitutional). Unlike parole, execution is "irremediable" and the most "unfathomable of penalties." *Id.* As a result, the fact-finding procedures in capital proceedings require a "heightened standard of reliability" not required in other types of criminal cases. *Id.* By contrast, Dutra receives parole hearings every few years, and has numerous future opportunities to eventually gain parole.

The applicable state-law parole regulations set forth in California Code of Regulations section 2402(c)(1) are not vague because their sub-definitions are sufficiently precise so as to guide the Board's decision. In *Hess v. Board of Parole & Post-Prison Supervision*, the Ninth Circuit held that a statute which allowed the state to postpone an inmate's parole if he was considered a danger to society because of mental illness was not unconstitutionally vague because it provided guidelines for making a postponement decision. 514 F.3d 909, 912 (9th Cir. 2008). Here, section 2402(c)(1) contains additional definitions intended to clarify the meaning of the phrase "especially heinous, atrocious, or cruel." Cal. Code Regs. tit. 15 § 2402(c)(1) (2010). Factors considered under the statute include whether there were multiple victims, whether the murder was execution style, whether there was a trivial motive, and whether there was exceptional disregard for human suffering. *Id.* The Board applied these standards and determined that Dutra's actions were especially heinous or cruel. Therefore, the state court could reasonably conclude that the standard set out in the statute is not unconstitutionally vague.

III.     *Apprendi* Violation

Dutra argues the Board used unproven fact findings to extend his sentence beyond the statutory maximum in violation of due process under *Apprendi v. New Jersey*, 530 U.S. 466, 522 (2000) and *Blakely v. Washington*, 542 U.S. 296, 316 (2004). In *Apprendi*, the court held that any fact which increases the penalty for a crime beyond the statutory maximum, other than the fact of a

6

prior conviction, must be submitted to a jury and proven beyond a reasonable doubt. 530 U.S. at 490. *Blakely* applied the *Apprendi* rule in finding that a state trial judge violated the defendant's Sixth Amendment rights by extending his sentence based on findings of fact which had not been submitted to the jury. 542 U.S. at 305. According to Dutra, the Board violated the *Apprendi* rule by making determinations about the commitment offense being "cruel and callous" or "especially heinous." Pet. Mem. at 50. Dutra argues that these determinations serve to elevate his crime from second degree murder to first degree murder. *Id.* at 47.

Dutra is incorrect in asserting that *Apprendi* applies here. A violation of *Apprendi* requires reliance upon a fact that extends a defendant's sentence beyond the statutory maximum. Here, however, Dutra pled guilty to second degree murder, and was sentenced to a term of fifteen years to life in prison. *See* Cal. Pen. Code § 109(a). This court has previously addressed this issue in denying Dutra's prior petition for habeas corpus after his 2004 parole denial. *Dutra v. Curry*, No. 06-07196, slip op. at 12 (N.D. Cal. May 1, 2008) (Patel, J.). Since the statutory maximum for second degree murder is life in prison, it would be impossible for the Board to extend Dutra's sentence beyond that term. As a result, Dutra's argument is without merit, and the *Apprendi* rule does not apply.

IV.     The Plea Agreement

Dutra argues that the Board was obligated to set a parole date under the terms of his plea agreement. According to the petitioner, if he complied with the terms of the plea, attended therapy sessions and other prescribed treatment, and refrained from violent behavior, he would be released after ten years in prison. Pet. Mem. 26.

This court has previously denied this claim following Dutra's 2004 parole denial, and Dutra makes no effort to distinguish his current claim from the previous one. Once again, Dutra's claim is barred by the statute of limitations. The one year statute of limitations for applying for a writ of habeas corpus runs from the date on which the "factual predicate on the claim . . . presented could

7

have been discovered through reasonable diligence." *Dutra v. Curry*, No. 06-07196, slip op. at 12. Here, the factual predicate was the breach of the alleged agreement. *Id.* Dutra was convicted on March 25, 1985, and commenced his custodial sentence with six months of pre-prison credits. Petition at 8. Assuming he stayed discipline free, the state would have breached the ten year agreement, if he had one, in early 1995. *Id.* Under AEDPA, Dutra had one year to file his claim before it was time-barred. *See Evans v. Chavis*, 546 U.S. 189, 200 (2006). This petition was not filed before the Superior Court until February 15, 2008, over ten years after the alleged breach of the plea agreement. As a result, this claim is barred by the statute of limitations.

Even if the claim were not barred by the statute of limitations, nothing in the record supports Dutra's contention of a breach of his plea agreement. There is no special arrangement guaranteeing Dutra's release if he remained discipline free. *Dutra v. Curry*, No. 06-07196, slip op. at 15. Dutra expressly acknowledged his sentence would be fifteen years to life. *Id.* Based on this evidence, Dutra's claim is without merit.

### V.  No Certificate of Appealability

A certificate of appealability will not issue because petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

### CONCLUSION

The petition for writ of habeas corpus is hereby DENIED.

IT IS SO ORDERED.

Dated: March 18, 2011

MARILYN HALL PATEL
United States District Court Judge

8